UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHELLE SARITELLI,<br>    Defendant. | Cr. No. 18-169-JJM-LDA |

## SENTENCING ORDER

Michelle Saritelli pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344(2), and is awaiting sentencing. *See* ECF No. 15. The issue currently before the Court is the estimation of losses that resulted from Ms. Saritelli's fraud to determine her offense level.[1] The Court held a sentencing hearing on October 2, 2019, during which it was presented with documentary evidence and the testimony of Special Agent Colin Woods of the Federal Bureau of Investigation ("FBI"), which the Court found credible. Considering all the evidence, the Court determines that the estimation of losses is greater than $250,000 but less than $550,000. Ms. Saritelli's base offense level is thus increased by twelve (12) points for specific offense characteristics. *See* USSG § 2B1.1(b)(1)(G).

---

[1] Pursuant to the plea agreement entered between Ms. Saritelli and the United States, Ms. Saritelli reserved her right to argue that the amount of loss was less than $250,000. ECF No. 15 at 3.

I.  BACKGROUND

From April 2008 until October 2017, Ms. Saritelli served as the office manager and bookkeeper of Stamas Auto and Truck Center, LLC ("Stamas Auto"), a used car dealership owned and operated by Leon Stamas and his son Lee Stamas (together, the "Owners"). ECF No. 21 at 4. In this role, Ms. Saritelli managed the finances of Stamas Auto by paying bills, managing its bank accounts, and maintaining accounting ledgers. *Id.*

In September 2017, after checks were written with insufficient funds, Citizens Bank froze Stamas Auto's bank accounts. *Id.* Alerted by the frozen bank accounts, the Owners reviewed Stamas Auto's financial records and suspected a significant number of checks had been forged and/or fraudulently negotiated. *Id.* The suspicious checks had largely been negotiated by Ms. Saritelli, Joe Latham (Ms. Saritelli's significant other), and a Stamas Auto salesman. *Id.* After being informed of the frozen bank accounts, Ms. Saritelli left work at Stamas Auto and did not return. *Id.*

The FBI was notified of the possible fraud and conducted a financial analysis of bank accounts associated with Stamas Auto and Ms. Saritelli from January 2014 to February 2018. *Id.* After concluding its analysis, the FBI determined that Ms. Saritelli fraudulently obtained funds from Stamas Auto by (1) depositing checks meant for Stamas Auto into her personal accounts, (2) making Stamas Auto checks payable to Mr. Latham, (3) altering "petty cash" checks, and (4) depositing cash stolen from Stamas Auto into her personal accounts. *Id.* at 4-5. Because financial records

for large periods of time were missing, the FBI was unable to identify the precise amount of the loss but estimate it to be well over $400,000. *Id.* at 7.

*Checks Fraudulently Deposited into Ms. Saritelli's Bank Accounts*

In its analysis, the FBI determined that Ms. Saritelli fraudulently obtained funds from Stamas Auto by issuing and depositing nineteen non-payroll related checks into her personal bank accounts in an amount totaling $10,167.24. *Id.* at 5. These checks were not authorized by either of the Owners. *Id.* At the sentencing hearing, Ms. Saritelli conceded that the loss of this $10,167.24 is attributed to her fraud. ECF No. 28 at 125.

*Checks Fraudulently Made Payable to Mr. Latham*

Ms. Saritelli also fraudulently obtained funds from Stamas Auto by preparing eleven checks to be payable to Mr. Latham from Stamas Auto in an amount totaling $9,069.17. ECF No. 21 at 5. The checks were ostensibly in payment for work Mr. Latham had done for Stamas Auto or for parts he sold to them. *Id.* The Owners disputed that Mr. Latham was ever owed any money from Stamas Auto and claimed that the checks were instead prepared and forged without either of their knowledge. *Id.* Ms. Saritelli does not challenge that the loss of this $9,069.17 is attributed to her fraud. ECF No. 28 at 125.

*Fraudulent "Petty Cash" Checks Written by Ms. Saritelli*

The FBI also concluded that Ms. Saritelli fraudulently obtained funds from Stamas Auto by altering "petty cash" checks to be for a higher amount and then keeping the excess cash for herself. ECF No. 21 at 5. When interviewed by the FBI,

3

the Owners estimated that they would use $300 a week in "petty cash" to provide change to customers or to purchase items for the dealership such as groceries, cleaning supplies, and gas for the vehicles. *Id.* The standard operating procedure was for Ms. Saritelli to write a check to cash and request one of the Owners to authorize and sign the check. ECF No. 28 at 17-18. Ms. Saritelli would then either personally negotiate the check or have another Stamas Auto employee negotiate the check and return the funds to her. *Id.* Once negotiated, that money was supposed to be added to the "petty cash" fund. *Id.*

In its investigation, the FBI discovered over 440 checks that were made payable to "petty cash" totaling approximately $150,000. ECF No. 21 at 5. Using $300 a week as an estimate, the FBI determined that $91,430 in excess "petty cash" was withdrawn during the time period analyzed. ECF No. 28 at 31. The Owners were able to locate copies of "petty cash" checks that they signed after being presented with them by Ms. Saritelli. ECF No. 21 at 6. The amounts on these checks were lower than the amounts of the checks that were ultimately cashed. *Id.* While the "petty cash" checks were negotiated by Ms. Saritelli and other members of the Stamas Auto staff, the other staff members who negotiated these checks claimed to have always delivered the full amount of cash to Ms. Saritelli. ECF No. 28 at 115. The "petty cash" checks suspected of being fraudulent were not accounted for on the financial ledgers maintained by Ms. Saritelli or were accounted for with false explanations. ECF No. 21 at 6.

Ms. Saritelli argues that the $91,430 in excess "petty cash" withdrawn during the time period analyzed should not be fully attributed to her fraud. ECF No. 28 at 125-26. It is her contention that this amount is only deemed excessive based on the Owner's estimation that they would not use more than $300 a week in "petty cash". *Id.* She further asserts that, because she was not the only one to negotiate these "petty cash" checks, excess amounts could have been stolen by the other staff members who negotiated the checks, despite the fact that these other staff members stated they would return the full amount to Ms. Saritelli. *Id.*

*Cash Deposits into Ms. Saritelli's Personal Accounts*

The FBI lastly determined that Ms. Saritelli stole cash directly from Stamas Auto and deposited it into her personal accounts. ECF No. 21 at 6. This was first discerned from an analysis of a cash receipt log from September 13, 2017 to October 2, 2017. *Id.* This cash receipt log indicated that, during the referenced time period, Stamas Auto received $13,740 in cash from eight different customers. *Id.* This cash, according to the Owners, was delivered to Ms. Saritelli in accordance with the practice of the dealership. *Id.* Ms. Saritelli should then have deposited the funds into the appropriate Stamas Auto bank account. *Id.* But none of the $13,740 was ever deposited into a Stamas Auto bank account. *Id.* Ms. Saritelli does not challenge that Stamas Auto's loss of this $13,740 is attributed to her fraud. ECF No. 28 at 125.

The cash receipt logs for the periods prior to September 13, 2017 disappeared after Ms. Saritelli left Stamas Auto.[2] *Id.* at 15. To determine whether Ms. Saritelli stole any additional cash, the FBI analyzed her personal bank accounts. *Id.* From January 2014 until September 2017 (immediately prior to Ms. Saritelli leaving Stamas Auto), Ms. Saritelli deposited approximately $365,442 in cash into her bank accounts. *Id.* These deposits were made almost daily using automated teller machines ("ATMs"). ECF No. 21 at 6. On some days, multiple cash deposits were made using different ATMs. *Id.* After Ms. Saritelli left Stamas Auto, this pattern of cash deposits ended. *Id.* at 6-7. The FBI has not been able to identify another source of the cash that was deposited into Ms. Saritelli's personal accounts. ECF No. 28 at 47-53. During the relevant time period, the only income claimed by Ms. Saritelli in her tax filings was her salary from Stamas Auto and approximately $3,000 she earned in gambling in 2014. *Id.* at 49. Ms. Saritelli originally claimed that she received this money from her parents. *Id.* at 49-50. After interviewing Ms. Saritelli's parents, the FBI determined that that was false and, in fact, Ms. Saritelli was giving her parents money to help pay their mortgage. *Id.* Although Ms. Saritelli disputes that this amount should be attributed to her fraud, she has not provided an alternative source of these funds. *Id.* at 127-29.

---

[2] The FBI was able to locate check ledgers removed from Stamas Auto in the basement of Ms. Saritelli's home. ECF No. 28 at 15. But it was unable to locate the missing cash receipt logs. *Id.* at 9, 40. It is the government's position that Ms. Saritelli destroyed these records. *See id.*

6

## II. STANDARD OF REVIEW

The guideline for 18 U.S.C. § 1344(2) offenses is found in USSG § 2B1.1, which provides for an increase in an offense level for excess losses. USSG § 2B1.1(b)(1). To impose a sentence enhancement under USSG § 2B1.1, the government must prove its applicability by a preponderance of the evidence. *See United States v. Alphas*, 785 F.3d 775, 784 (1st Cir. 2015) (citing *United States v. Paneto*, 661 F.3d 709, 715 (1st Cir. 2011)). In a case where a "defendant's claims are demonstrably rife with fraud," however, the Court "may use the face value of the claims as a starting point in computing loss." *Id.* (citing *United States v. Campbell*, 765 F.3d 1291, 1304–05 & n. 13 (11th Cir. 2014) and *United States v. Hebron*, 684 F.3d 554, 562–63 (5th Cir. 2012)). The burden then shifts to the defendant to provide evidence showing that the amounts represent legitimate claims. *Id.* "After the record is fully formed, the sentencing court must determine the amount of loss that the government (which retains the burden of proof) is able to establish." *Id.* But the Court "need only make a reasonable estimate of the loss". *Id.* (quoting USSG § 2B1.1, comment n. 3(C) (internal quotation marks omitted)).

## III. ANALYSIS

The parties dispute whether the $91,430 in excess "petty cash" and the approximately $365,442 of cash that Ms. Saritelli deposited in her personal accounts from January 2014 until September 2017 should be included in the amount of loss attributed to Ms. Saritelli's fraud. Ms. Saritelli argues that the government did not meet its burden in proving that the loss of these amounts resulted from her conduct

7

and they thus should be excluded from the total. ECF No. 28 at 125-29. According to Ms. Saritelli, the amount of loss equals $32,976[3] and her offense level should be increased by only four (4) points for specific offense characteristics. *See* USSG § 2B1.1(b)(1)(C). The government, however, argues that the excess "petty cash" and unattributed cash deposits should be included in the amount of loss, resulting in a total loss greater than $250,000 (but less than $550,000) and a twelve (12) point increase for specific offense characteristics. *See* USSG § 2B1.1(b)(1)(G). The Court agrees with the government.

With respect to "petty cash", the Court finds that the government met its burden in showing that it was Ms. Saritelli's fraud that resulted in an estimated $91,430 of excessive "petty cash" being withdrawn from Stamas Auto's bank accounts. Ms. Saritelli was responsible for preparing the checks payable to cash that were used for the "petty cash" fund. As Special Agent Woods testified at the sentencing hearing, the FBI determined that on numerous occasions, Ms. Saritelli would prepare a check payable to cash for an amount to be signed by one of the Owners. ECF No. 28 at 40. When the check was negotiated, however, it would be for a larger amount. *Id.* While Ms. Saritelli did not negotiate all these checks, she did negotiate a portion and was responsible for maintaining the financial ledgers. *Id.* at 38. The other staff members who negotiated these checks for Ms. Saritelli claimed to have delivered the full

---

[3] This amount includes the $10,167.24 Ms. Saritelli obtained through checks deposited in her personal accounts, the $9,069.17 obtained through checks made payable to Mr. Latham, and the $13,740 of cash directly deposited into her account. ECF No. 28 at 125.

amount of cash to Ms. Saritelli. *Id.* at 115. Additionally, many of the "petty cash" checks the FBI suspected were altered were never accounted for in the financial ledgers and, in other instances, explanations were listed in the ledgers by Ms. Saritelli that proved to be fraudulent. *Id.* at 38. It is thus more likely than not that Ms. Saritelli's fraudulent actions led to the loss of $91,430 in excess "petty cash".

With respect to the approximately $365,442 of cash that Ms. Saritelli deposited in her personal accounts from January 2014 until September 2017, the Court also finds that the government met its burden in showing that this amount is attributed to Ms. Saritelli's fraud. In conducting its investigation, the FBI came to believe that a large portion of the fraud was done by stealing cash from Stamas Auto. ECF No. 28 at 38. This belief was supported by its analysis of the cash receipt log from September 13, 2017 to October 2, 2017, which revealed (and is not disputed by Ms. Saritelli) that instead of depositing $13,740 in cash received from eight customers, Ms. Saritelli took it herself. *Id.* at 28. Unfortunately for the investigation, the cash receipt logs for the periods prior to September 13, 2017 disappeared after Ms. Saritelli left Stamas Auto. *Id.* The lack of records led the FBI to analyze Ms. Saritelli's personal bank accounts, showing a pattern of frequent and large cash deposits that ended when Ms. Saritelli left Stamas Auto. *Id.* at 40-46. The FBI was unable to determine the source of this cash and Ms. Saritelli deceitfully claimed she received it from her parents. *Id.* at 47-53. Considering that Ms. Saritelli has not provided an alternative source for this cash, along with the fact that she admitted to stealing the cash shown on the only available cash receipt log, and that her pattern of frequent

9

and large cash deposits ended after she left Stamas Auto, it is more likely than not that this cash was obtained by fraud and thus should be included in the loss amount.

## IV. CONCLUSION

Considering the documentary evidence and the testimony of Special Agent Woods, the Court's estimation of the loss is greater than $250,000 but less than $550,000. Ms. Saritelli's base offense level is thus increased by twelve (12) points for specific offense characteristics. *See* USSG § 2B1.1(b)(1)(G).

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge

November 12, 2019